## GILLETT *against* HALL and others.

To effect a complete adjustment of co-partnership concerns, the extraordinary powers of a court of chancery may be necessary; and when necessary for that purpose, it will entertain jurisdiction, whether an action of account would, or would not, lie, between the parties.

Therefore, where the parties to the articles of co-partnership were *A*, on one part, and *B* and three other persons, on the other part; and *A* brought his bill in chancery for an account against *B* and others, alleging, that some of the defendants forcibly and fraudulently seized upon notes, accounts and other papers belonging to the co-partnership, and took them from the plaintiff's possession, and still withheld them; it was held, that this was a proper subject of equitable jurisdiction.

*A* supplemental bill, when properly before the court, is an addition to the original bill, and becomes part of it, so that the whole is to be taken as one amended bill.

Therefore, where the original bill sought the adjustment of a partnership account, and a supplemental bill was filed, calling for the production of papers in the defendants' hands, to be lodged with the clerk of the court for inspection, and praying for an injunction against them with respect to the partnership

debts and effects; it was held, that the matters alleged in the supplemental bill might properly be considered, in connexion with the original bill, in deciding upon the question of jurisdiction; and in this view, the jurisdiction was unquestionably sustainable.

Where the committee appointed in a suit in chancery to take the partnership account, estimated the partnership effects, not by a sale, but by valuation or appraisal; and it appeared, that such effects were in the possession of the party objecting to the proceeding, who refused to give any account of them; it was held, that the course taken by the committee, was the only one in their power, and ought to receive the sanction of the court.

Where the committee, in taking such account, charged to the defendants sundry notes in their hands belonging to the co-partnership against sundry persons, at the nominal amount of such notes, though it did not appear whether they had been collected, by the defendants, or were collectible; yet as the defendants had reasonable notice of the time and place of the meeting of the committee, and refused to appear before them, and neglected to make any disclosure, explanation or denial of the plaintiff's charges; it was held, that the committee might, with propriety, take those charges *pro confesso*, except so far as modified or explained, by the evidence before them; and consequently, that their proceeding was, in this respect, unexceptionable.

But where the committee charged to the defendants, in such account, "one slave, horses, wagons, harnesses, clocks, and divers other articles of visible personal property in *Alabama*, at 4,600 dollars;" and it did not appear, that such property was ever in the possession or under the controul of the defendants; it was held, that this charge ought to be expunged from the account.

*Litchfield,*
*June,* 1840.

Gillett
*v.*
Hall.

THIS was a bill in chancery for an account.

The original bill, brought in *October*, 1837, stated, That on the 24th of *July*, 1835, *Frederick P. Hall, Edward Seymour, Edward Sexton*, and *Anson Williams*, entered into a co-partnership with the plaintiff, by which it was agreed between them, *viz.* by the plaintiff on the one part, and said *Hall* and others, on the other part, that the plaintiff and said *Hall* should go to the state of *Alabama*, and there receive brass and wood clocks and other property, to be forwarded to them, by the other partners, to be sold in that state; that such co-partnership should continue for the period of two seasons, or twenty-two months; that the business should be carried on, under the firm of *Gillett & Hall*; that the plaintiff should be entitled to one half of the profits of the business, and sustain one half of its losses, and that said *Hall, Seymour, Sexton* and *Williams* should be entitled to the other half of the profits, and should sustain one half of the losses; that immediately after entering into this co-partnership, the plaintiff and *Hall*, in pursuance of said agreement, went to the state

of *Alabama*, and took with them a number of hands employ-
ed to sell said clocks and other property, and continued there,
selling the same, and thereby made great profits to the co-
partnership ; that while there, they transmitted large sums
of money to said *Seymour*, to the credit of the company, *viz.*
8000 dollars ; that said *Hall*, while there, received for clocks
and other property so sold, large sums of money, *viz.* 5000
dollars, and also received for said clocks and other property
belonging to the company, notes to the amount of 17,000
dollars : that at the expiration of the time limited for the du-
ration of the co-partnership, the plaintiff left *Alabama*, and
returned to *Connecticut*, to settle with said *Hall*, *Seymour*,
*Sexton* and *Williams*, and close the concerns of the co-part-
nership, having then in his possession, notes belonging to the
co-partnership, to the amount of about 7000 dollars : that
soon after the plaintiff's return, said *Hall* and *Seymour*, fraud-
ulently and forcibly seized upon all the notes and other pa-
pers and accounts, which the plaintiff had in his possession
belonging to the co-partnership, and relating to its affairs,
and withheld them from the plaintiff : that said *Hall* and
*Seymour* wholly refused to make any settlement with the
plaintiff, for the co-partnership concerns, although often re-
quested and demanded : and that the sum now due to the
plaintiff from said *Hall*, *Seymour*, *Sexton* and *Williams*, on
account of the co-partnership dealings, exceeds the sum of
12,000 dollars.

In *February*, 1838, while the original bill was pending in
the superior court, the plaintiff filed his supplemental bill,
stating, That said *Seymour* and *Hall*, had each of them a
large amount of notes, moneys and property in their hands,
*viz.* 15,000 dollars, being the effects of said company ; that
said *Seymour*, *Hall*, *Sexton* and *Williams* refused to settle the
concerns of the co-partnership, and were appropriating its
effects to their own use and benefit ; that said *Seymour* and
*Hall* were wholly insolvent ; that the plaintiff believed, and
had good reason to believe, that they would dispose of all
the effects of said company for their own use ; that they
were fraudulently combining to cheat the plaintiff, and to
deprive him of all his right and interest in the effects of the
co-partnership ; praying that said *Seymour* and *Hall* should
be ordered to disclose, under oath, what moneys of the co-

partnership notes or effects they, or either of them, had, at any time, received, or now have in their possession; also to disclose under oath all accounts, letters, books, contracts and papers of every nature, in any way appertaining to the concerns of the co-partnership; and that the same be brought into court, that they may be examined and inspected, by the parties to this suit, and used as evidence on the trial; praying also, that said *Seymour* and *Hall* be enjoined, under a suitable penalty, not to collect or dispose of any of the notes, belonging to the co-partnership, nor to appropriate the same, nor any of the moneys or effects of the co-partnership, in any way, but to hold them subject to the decree of the court.

*Litchfield,*
*June, 1840.*

Gillett
*v.*
Hall.

At the term of the court in *August*, 1839, a committee was appointed, to take the account between the parties, and report the facts. That committee found, that on the 24th of *July*, 1835, the plaintiff and defendants entered into a co-partnership, for the purposes and on the terms stated in the original bill, and conducted business at the *South*, in the manner and for the period therein stated; that said *Hall*, while at the *South*, received, for the use of the company, large sums of money, and notes to a large amount; that after the partnership had expired, the plaintiff returned to *Connecticut* to wind up the concerns of the firm, bringing with him notes belonging to the company, to the amount of 5289 dollars, 83 cents, and receipts for notes belonging to the company, left for collection, to the amount of 942 dollars, 62 cents; all which notes were hopeful; that said *Hall* and *Seymour*, by fraudulent and forcible means, seized upon said notes and receipts, and dispossessed the plaintiff of them, and took them into their own possession, and have ever since withheld them from the plaintiff, as stated in his bill; that the affairs of the concern remain unliquidated between the parties; and that the plaintiff specially demanded of the defendants to render an account, and adjust the affairs of the co-partnership, on the 25th of *September*, 1837.

The committee stated the account which they took, as follows:

" Amount of property on hand belonging to
said late company of *Gillett & Hall*, as

*Litchfield,*
*June, 1840.*

Gillett
*v.*
Hall.

follows, *viz.* Notes of hand against divers persons, which have always been in the hands of the defendants, and whether actually collected does not appear, $10,880 67

Notes of hand brought in, by the plaintiff, and taken from him, as stated in this report, with the receipts for the notes, as stated in this report, 6,232 45

One slave, horses, wagons, clocks, harnesses, and divers other articles of visible personal property in *Alabama,* 4,600 00

Amount of partnership effects, 21,713 12

Deduct from the above, the following debts due from said late company, *viz.* to *Seymour, Hall &amp; Co.,* [which company consists of the defendants in this bill.] $11,998 86

To *Joseph R. Gillett,* the plaintiff, 2,538 53

14,537 39

Total profits, 7,175 73

The one half of which last named we find belongs to the plaintiff, as his share of the profits of said concern, 3,587 86

To which the balance due the plaintiff on account, as above, is added, 2,538 53

$6,126 39

The last-mentioned sum the committee, therefore, found due to the plaintiff from the defendants. In stating the account and coming to this result, the committee charged the defendants with the notes and property on hand, at the time of the dissolution, at what they found to be the true value thereof, *viz.* 21,713 12; but whether this property remained unsold, and the notes uncollected, or whether the defendants had converted the whole into money, or what acts they had done respecting them, the committee reported that they were not informed, as the defendants came not to disclose, nor was there any proof to show.

To the acceptance of this report, the defendants filed a remonstrance, stating sundry grounds, which appeared on the face of the bill and report.

The case was reserved for the advice of this court, as to what decree should be passed, or further proceedings had thereon.

*G. C. Woodruff,* for the defendants, contended, 1. That the superior court, as a court of chancery, had no jurisdiction of the suit. There are but two parties to the partnership contract, *viz.* the plaintiff, on the one part, and the defendants, on the other. On the facts alleged, the action of account is an adequate remedy ; and there being adequate remedy at law, a court of equity has no jurisdiction. *Stat.* 187. *tit.* 30. *s.* 1. (ed. 1835.) *Stannard* v. *Whittelsey,* 9 *Conn. Rep.* 556. *Beach* v. *Norton, Id.* 182. *Beach* v. *Hotchkiss,* 2 *Conn. Rep.* 425.

2. That if the court has jurisdiction, the report of the committee ought not to be accepted. First, because the partnership effects have not been converted into money, and the value thus ascertained ; but the committee have proceeded upon an estimate or simple valuation. In every case in which a court of equity interferes in closing the concerns of a partnership, it directs the value of the whole of the stock to be ascertained, in the way in which it can be best ascertained, *viz.* by a sale and its conversion into money. *Gow. on Part.* 291, 2. *Collyer* 167. & seq. *Featherstonhaugh* v. *Fenwick,* 17 *Ves.* 309. *Sigourney* v. *Munn,* 7 *Conn. Rep.* 11. 324. *Crawshay* v. *Maule,* 1 *Swanst.* 523, 4.

Secondly, because it does not appear from the report of the committee, that the notes and other claims in the hands of the defendants, have been collected, or are collectible ; but they are charged to the defendants at their nominal amount ; as are also the *slave,* (they might as well have charged the air we breathe) the horses, and other personal property, which do not appear ever to have been in the defendants' hands, and which may have perished.

Thirdly, because the partnership accounts between *all* the partners have not been adjusted. The committee do not find for how much *Seymour* or *Hall* is individually liable ; nor that *Sexton* or *Williams* has any thing in his hands ; and yet

*Litchfield,*
June, 1840.
———
Gillett
*v.*
Hall.

they award, that the plaintiff recover of all the defendants, leaving the accounts unsettled as between them.

*O. S. Seymour* and *F. Bacon,* for the plaintiff, contended,

1. That the original bill was within the jurisdiction of a court of equity. Matters of *account* and of *partnership* constitute two promiment heads of equitable jurisdiction. 1 *Story's Eq.* 423, 4. 446, 7. 612. 632, 3. Here they co-exist. This is a case of *partnership accounts.*

2. That if there was any doubt on this subject before the supplemental bill was filed, there could be none afterwards. The grounds of relief therein stated, and the relief thereby sought, are peculiar to a court of equity, *viz.* a *discovery,* the *production of books and papers,* and an *injunction.* The interposition of this court might be necessary for other purposes, such as to effect a dissolution ; to secure a sale of partnership effects ; to appoint a receiver ; to adjust equitable and legal rights in one suit, &c.

3. That there is no validity in the objection arising from the number of parties to the partnership contract. In the first place, there is no rule or decision that chancery will not interfere where there are but two parties. It has, indeed, been decided, that resort *must* be had to this court, in matters of account, where the parties exceed two. *Beach* v. *Hotchkiss,* 2 *Conn. Rep.* 425. But does it thence follow, that where they do not exceed this number, no equitable relief can be had ? But secondly, the truth is, that there are several individuals before the court, all having distinct rights, and subject to distinct liabilities; and if the fact that all the defendants constituted originally but one party to the partnership contract, makes any difference, it only renders the case more *complicated,* and a more fit subject, on that very account, of equitable jurisdiction. 1 *Story's Eq.* 633.

4. That the report of the committee was unexceptionable, and ought to be accepted. As to the sale in question ; *non constat* that the property was not sold. But if it was not, it was not the plaintiff's fault ; for it was not in his hands. As to the notes and receipts in the plaintiff's hands ; they were forcibly seized and taken from him, by two of the defendants. Is it for them to complain, that he has done nothing with them ?

The committee find the facts stated in the bill; and then, as to the account, they find a certain balance due to the plaintiff. The report cannot be set aside for any defect in evidence; for the evidence may have been, and it will now be presumed that it was, abundant.

Upon the point of jurisdiction, it was said, in reply, that if the original bill did not give jurisdiction, the supplemental bill could not confer it; for there was no bill pending—nothing to attach a supplemental bill to. But taking both bills together, it does not appear that the interposition of a court of chancery was necessary to do complete justice between the parties. Auditors could take the account and admit the parties to their oaths, in an action at law, as well as a committee in chancery; and the judgment of the former court would be as effectual as the decree of the latter.

CHURCH, J. The defendants claim, that there are only two parties to this bill; and therefore, as it is a bill for an account, the only remedy is at law.

It has long been holden, by this court, that no action at law will lie in this state, for the settlement of a co-partnership account, where the number of co-partners exceeds two. *Beach* v. *Hotchkiss,* 2 *Conn. Rep.* 425. 430. But we are not informed, nor persuaded, that it necessarily follows, or has ever been decided, either by our courts or elsewhere, that the only remedy in such cases, is at law, where there are no more than two partners. Nor is it necessary that we determine this point, in the present case.

Enough appears in this bill to give jurisdiction to a court of equity. To effect an entire adjustment of co-partnership affairs, the extraordinary powers of a court of chancery may become frequently necessary; such as to decree a dissolution, to appoint a receiver, to order a sale, or decree an injunction, &c. It is alleged in the original bill, in this case, that some of the defendants, forcibly and by fraud, seized upon notes, accounts and other papers belonging to the co-partnership concerns, and took them from the plaintiff's possession, and still withhold them. The exercise of some powers beyond those appertaining to a court of law, may be indispensable, under such circumstances. But more than this; the supple-

*Litchfield,*
June, 1840.

Gillett
*v.*
Hall.

Gillett
*v.*
Hall.

mental bill, which has been filed, calls for these papers in the hands of the defendants ; demands that they be lodged in the hands of the clerk of the court for inspection ; and prays for an injunction that the defendants proceed no farther in the collection and disposition of the co-partnership debts and effects.

We do not accede to the claim of the defendants, in this case, that if the original bill did not disclose sufficient facts to support the jurisdiction of a court of chancery, jurisdiction could not be given, by the supplemental bill. It does not appear, whether the supplemental bill was filed before any proceedings under the original bill were had ; or whether, by consent of parties, or leave of the court. But we must now consider the proceedings to have been regular. A supplemental bill, when properly allowed and filed, is an addition to the original bill, and becomes part of it. The whole is to be taken as one amended bill. *Mitford's Pl.* 34. *Cooper's Eq. Pl.* 73. *Shepherd* v. *Merrill,* 3 *Johns. Ch. Rep.* 423. *Thom* v. *Germand,* 4 *Johns. Ch. Rep.* 363. 3 *Atk.* 132. *Goodwin* v. *Goodwin,* 3 *Atk.* 370.

Seeing then, as we do, upon the whole bill, sufficient allegations to give jurisdiction to a court of equity, the objection taken by the defendants for want of jurisdiction, cannot prevail.

But the defendants interpose exceptions to the report of the committee, and object to its acceptance. First, because it appears from the report, that the co-partnership effects have never been sold and converted into cash ; but the committee have estimated them by valuation or appraisal, and have charged the defendants with the price thus ascertained. And the case of *Sigourney* v. *Munn,* 7 *Conn. Rep.* 11. 20. 324., is relied upon as sustaining this objection. Whatever might be our opinion of the leading doctrines advanced in that case, as furnishing an unyielding rule for the settlement of co-partnership affairs, and especially of country co-partnerships, if we were now called upon to review them, it is not necessary to anticipate ; for we are sure they are not at all applicable to this case. In that case, *Sigourney,* the plaintiff, had the whole of the effects in his own hands, and under his own controul ; he intermingled them with others ; and he alone could have sold them, and ascertained their

value, by public sale; and *Munn* objected, because he had not done this. In the present case, the situation of the parties is exactly reversed. The defendants, the party making the objection, were in possession of the effects; they only could have disposed of them, and determined their value, by public sale; and they refuse to give any account of them. If there has been any neglect or omission of duty in regard to these effects, it is chargeable to the defendants alone; and they cannot be received to object to the consequences of their own fault. The committee have taken the only course in their power, to determine the value of the goods; and if the defendants suffer in consequence, they only bear the results of their own neglect.

Secondly, the defendants object to the report, because the committee have charged the notes at their nominal amount, without distinguishing the good or collectible, from the doubtful and desperate. In explanation and justification of this course, the committee say, that they gave reasonable notice to the defendants of the time and place of their meeting, who refused to appear before them, and neglected to make any disclosure, explanation or denial of the plaintiff's charges. The committee thereupon proceeded, upon the only evidence they had, the evidence produced by the plaintiff. The defendants had these notes in their own possession; and they only knew their situation and value; which they could have shown to the committee. Under such circumstances, produced by the defendants themselves, the committee could have pursued no other course than the one adopted by them; unless it was to have abandoned the investigation as impracticable, and thus have permitted the defendants, by their own act, to defeat the course of justice. It was the duty of the committee, under such circumstances, to take the charges of the plaintiff against the defendants *pro confesso*, unless modified or explained, by the evidence before them.

But there is one charge in the account, as adjusted by the committee, which does not seem to us sufficiently justified, by their explanation. It is the charge of 4,600 dollars, for property in *Alabama*. It no where appears, that this property was ever in the possession, or under the controul, of the defendants; it may have been in the plaintiff's possession. We think this charge must be expunged from the account.

And we shall advise the superior court, that the report of the committee be accepted, with this exception; and that the superior court make such further order in regard to the claim of 4,600 dollars, as equity shall require.

In this opinion the other Judges concurred, except STORRS, J., who was not present.

*Report partially accepted.*